UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
In Re:

                                                                           Case No. 10-48375-cec

MALISIA Y. WRIGHT                                              Chapter 13

                                    Debtor
----------------------------------------------------------------------x
MALISIA Y. WRIGHT,

                                    Plaintiff,                   Adv. Proc. No. 10-1271-cec

       -against-

CHASE

                                    Defendant.
----------------------------------------------------------------------x

## DECISION

APPEARANCES:

Ehsanul Habib, Esq.
Law Office of Ehsanul Habib
118-21 Queens Boulevard, Suite 603
Forest Hills, New York 11803
Attorney for Malisia Y. Wright

Edward Rugino, Esq.
Rosicki, Rosicki & Associates, PC
51 East Bethpage Road
Plainview, New York 11803
Attorney for Chase

                                                    CARLA CRAIG
                                      Chief United States Bankruptcy Judge

This matter comes before the Court on the complaint of Malisia Y. Wright (the "Debtor"), seeking to classify a second lien on the Debtor's principal residence as unsecured for the purposes of her Chapter 13 plan, and to remove the lien as of record upon her receipt of a discharge. JP Morgan Chase Bank ("Chase"), the holder of the second lien, opposes the Debtor's requested relief. Because the Debtor failed to establish that Chase's second lien is wholly unsecured, the Debtor's complaint is dismissed.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(K). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 31, 2010. According to her petition, the Debtor's principal residence is located at 116-34 142nd Street, Jamaica, New York 11436 (the "Property"). The Debtor lists the value of the Property on Schedule A as $205,000.

The Debtor's Schedule D lists two creditors holding claims secured by the Property: 1) a first mortgage held by HFC, and 2) a home equity line of credit held by Chase. The Debtor lists HFC's claim as $210,661.00, and Chase's claim as $72,390.00.

On October 12, 2010, the Debtor commenced an adversary proceeding against Chase to determine the extent and validity of Chase's lien on the Property. The Debtor submitted an appraisal with her complaint, which valued the Property at $205, 000. On the basis of this

valuation, and the asserted value of the first mortgage, the Debtor sought to treat Chase's second lien as unsecured for the purposes of her Chapter 13 plan and to remove the lien from the Property upon her receipt of a discharge.

On October 30, 2010, Beneficial Homeowner Service Corporation ("Beneficial"), the holder of the first mortgage on the Property, filed a proof of claim in the amount of $209, 636.31.

On November 11, 2010, Chase filed an answer to the Debtor's complaint. Chase filed a proof of claim in the amount of $72,452.20 on January 13, 2011.

Because the appraiser whose appraisal provided the basis for the Complaint could not be located to appear at the trial, the Debtor obtained a second appraisal, which valued the property at $210,000.00.

On November 9, 2011, a trial was conducted to determine the value of the Property.

## DISCUSSION

Section 1322(b)(2) of the Bankruptcy Code does not permit a Chapter 13 plan to "modify the rights of holders of secured claims," when the claims are "secured only by a security interest in real property that is the debtor's principal residence."[1] This anti-modification provision, however, does not protect a claim that is determined to be wholly unsecured under §506(a). Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122, 126 (2d. Cir. 2001). Under §506(a), a creditor's claim is wholly unsecured when there is no equity in the debtor's property in excess of encumbrances that have priority over the creditor's lien.[2] In such an instance, the Second

---

[1] Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.
[2] Section 506(a) provides:
    An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed

Circuit explained, the protection of §1322(b)(2) does not apply because, by its terms, §1322(b)(2) only applies to the "holders of secured claims." Pond, 252 F.3d at 127.

Accordingly, for the Debtor in this case to modify Chase's lien on the Property, which is the Debtor's principal residence, the Debtor bears the burden to establish that "there is not even one dollar of value" in the Property above the value of Beneficial's claim. In re Lepage, 2011 WL 1884034, at *4 (Bankr. E.D.N.Y. 2011) (quoting In re Karakas, 2007 WL 1307906, at *6 (Bankr. N.D.N.Y. 2007)(citations omitted)). Beneficial filed a proof of claim in the amount of $209,636.31, which has not been disputed. Therefore, the sole issue is whether the value of the Property is greater than or less than $209, 636.31.

"Valuation outside the actual market place is inherently inexact." Rushton v. Commissioner, 498 F.2d 88, 95 (5th Cir. 1974). "Because of the subjective nature of the appraisal process, courts are given wide latitude in determining value." In re Patterson, 375 B.R. 135, 144 (Bankr.E.D.Pa. 2007). "A court is not bound by values determined by appraisals but rather may form its own opinion as to the value of the subject property after consideration of the appraisers' testimony and their appraisals." Id. (quoting In re Karakas, 2007 WL at *6–7) (citation omitted)). Moreover, "[b]ecause the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses." In re Patterson, 375 B.R. at 141 (quoting In re Smith, 267 B.R. 568, 572 (Bankr.S.D.Ohio 2001).

At the evidentiary hearing to determine the value of the Property, the Debtor offered two appraisals conducted by Trevor Powell, as well as Mr. Powell's supporting testimony. Mr. Powell testified that his appraisals were based on the bracketed method of adjusted value, which

---

disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

involved reviewing the values of adjusted comparable sales and settling on a number within the range of those sales that Mr. Powell "was more comfortable with." (Tr. at 17-18, 26: 5-11.)[3] Using this methodology, Mr. Powell appraised the Property, as of October 20, 2011, at $215,000 and $210,000. (Pl. Ex. A; Pl. Ex. B.) Debtor's counsel explained that the submission into evidence of the $215,000 appraisal was accidental, and asserted that the $210,000 value was the more accurate appraisal. (Tr. at 84: 3-21.) Mr. Powell testified that the difference in value between the two appraisals was attributable to his inclusion in the $210,000 appraisal of a time adjustment that was used in an earlier appraisal obtained by the Debtor. (Tr. at 123:24-127:10.)

Chase offered the testimony of Domenick Neglia, whose company also appraised the Property, and who provided a critique of Mr. Powell's appraisal. Mr. Neglia testified that his company used the sales comparison approach in valuing the Property at $250,000 as of February 4, 2011. (Tr. at 73: 17-19, 72:2-3; Def. Ex. B.) Mr. Neglia explained that the sales comparison approach involved comparing the sale prices of similar properties in the same neighborhood as the Property, while making adjustments for differences between the Property and the comparable sales. (Tr. at 72:13-21.) In his testimony, Mr. Neglia questioned several aspects of Mr. Powell's appraisals, including his characterization of the Property as being in "average" condition, and his use of two short-sales in his comparable sale analysis. (Tr. at 78, 89-91.)

Based on all of the appraisals admitted into evidence, and the supporting testimony, the value of the Property is not less than $209,636.31. In fact, even if the lower of Mr. Powell's appraisal is deemed accurate, the Debtor has, as a matter of law, not met its burden of establishing that Chase's lien is wholly unsecured.

---

[3] "Tr." refers to the transcript of the hearing held on November 9, 2011. Citations to the transcript are by page number and line.

Debtor's counsel contends that Mr. Neglia's appraisal, and those of Mr. Powell, should be disregarded. Instead, Debtor's counsel argues that the Court should determine that the value of the Property is lower than any of the appraisals proffered by the experts who testified at the hearing. Debtor's counsel makes two arguments in support of this contention, neither of which have merit.

First, Debtor's counsel argues that because of its condition, the Property warrants a lower valuation. (Tr. at 5: 8-17.) The Debtor testified that the Property is not properly insulated, has electrical and plumbing issues, and needs the radiator and wood floors replaced. (Tr. at 55-57.) Debtor's counsel asserts that on the basis of these needed repairs, the Property's value is in fact lower than even the lowest value attributed to the Property by Mr. Powell, the Debtor's expert. (Tr. at 5: 8-17.)

This conclusion is completely unsubstantiated by the record. No evidence was introduced that any of the problems with the Property noted by the Debtor in her testimony were not present when either Mr. Powell or Mr. Neglia's company appraised the Property. Any such problems with the Property's condition would have been taken into consideration by the appraisers in reaching their respective valuations. (Tr. at 20: 6-22, 24: 3-12, 39-41, 51: 14-17.)

Second, Debtor's counsel argues for the adoption of a lower valuation because of declining homes values in the area of the Property. (Tr. at 130: 17-19.) At trial, Debtor's counsel agreed that the relevant valuation date for the Property was the petition date. (Tr. at 130: 20-23.) If August 31, 2010, the petition date, is accepted as the proper valuation date, Debtor's argument that the Property has been depreciating in value only works against the Debtor because that date precedes her appraisals. Although courts have reached divergent conclusions as to the proper date to value property under §506(a) in this context; Debtor counsel's request for a

speculative valuation based on the assertion that real estate prices are declining is insufficient to establish that Chase's lien is wholly unsecured, given that all three appraisals admitted into evidence show otherwise. Compare, e.g., Johnson v. GMAC (In re Johnson), 165 B.R. 524 (Bankr. S.D. Ga. 1994) (holding that the petition date is the proper valuation date for a "strip off" valuation under §506(a)) with Crain v. PSB Lending Corp. (In re Crain), 243 B.R. 75 (Bankr. C.D.Cal. 1999) (holding that the proper valuation date is the effective date of the Chapter 13 plan) with Aubain v. LaSalle National Bank (In re Aubain), 296 .R. 624 (Bankr. E.D.N.Y. 2003) (endorsing a flexible approach, but finding that under the facts of the case, the petition date was the proper valuation date). Based on the record established at the hearing on November 9, 2011, the Debtor failed to meet its burden of proof to establish that Chase's lien is wholly unsecured under §506(a).

## CONCLUSION

For the reasons set forth above, the Debtor's complaint seeking a determination that Chase's claim is wholly unsecured for the purposes of the Debtor's Chapter 13 plan, and to remove Chase's lien as of record upon the Debtor's receipt of a discharge, is dismissed. A separate order will issue.



Dated: Brooklyn, New York
December 2, 2011

_____
**Carla E. Craig**
**United States Bankruptcy Judge**